# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

**SHERIA C. JOHNSON,**  CASE NO.: 2:22-cv-00093

    Plaintiff,

vs.

**TRACEY BURTON, AND PREFERRED INSURANCE SOLUTIONS, LLC**

    Defendants.
_____/

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Sheria C. Johnson (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby sues Defendants, Tracey Burton (hereinafter "Burton") and Preferred Insurance Solutions, LLC (hereinafter "PIS") (Burton and PIS are hereinafter collectively referred to as "Defendants") and in support thereof state as follows:

## JURISDICTION AND VENUE

1. The jurisdiction for this Court is conferred by 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

2. Venue is proper in this District as Defendant Burton resides in this District, the issues described in this Complaint occurred in this District, and Defendant PIS transacts business within this district. 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff is a natural person and resident of the State of Florida, residing Crystal River, Florida in Citrus County.

4. Defendant Burton is natural person and resident of the State of Tennessee, residing Kingsport, TN in Sullivan County.

5. Defendant PIS is a domestic limited liability company with its principal place of business in Kingsport, TN in Sullivan County and is authorized to do business in the State of Tennessee.

## FACTUAL ALLEGATIONS

6. In or around the summer of 2014, Plaintiff contacted Burton to discuss her insurance and investment needs.

7. Burton is a licensed insurance agent in the State of Tennessee and agent of PIS.

8. Burton, individually and as an agent of PIS, held himself out as a "financial advisor" who could provide advice and guidance to Plaintiff related to her life insurance and investment needs.

9. At or around the time of their initial teleconference, Plaintiff was planning to take an extended trip to a remote area of South America and wanted to ensure her son would be financially secure should she pass away while she was abroad. Plaintiff also wanted to ensure she had a stable and predictable income stream after she returned from her trip to South America.

10. During her initial consultations with Burton, Plaintiff told Burton, who was acting individually and as an agent of PIS, she desired to purchase a life insurance policy and set up an investment account that would generate interest for her to live off of in the future. Plaintiff also told Burton during this conversation that she planned to retire after she returned from her trip and had $1 million dollars to use toward the retirement plan Burton was going to create for her.

11. Following their initial teleconference, Burton, individually and as an agent of PIS, flew to Florida in order to meet Plaintiff in-person and pitch the sale of an Allianz Life Pro+ Fixed Index Universal Life Insurance Policy (the "Policy").

12. Following this meeting, Burton, individually and as an agent of PIS, flew back to Tennessee and prepared the Policy application, and other related paperwork, for Plaintiff to sign.

13. The Policy proposed by Burton had over $6,000,000 of death benefit available to the extent Plaintiff passed away while the Policy was in place. The amount of death benefit under the Policy was in excess of what was needed by Plaintiff at that time of her life. Moreover, Burton could have proposed, offered and/or sold Plaintiff a term life insurance policy in order to provide her with the life insurance she was seeking at that time.

14. Burton, individually and as an agent of PIS, suggested the Policy would meet all of Plaintiff's needs and would satisfy her investment objectives during retirement.

15. At the time the Policy was proposed, Plaintiff had very little investment experience and placed a great deal of trust and confidence in Burton.

16. Plaintiff relied on Burton, individually and as an agent of PIS, to select and recommend an insurance policy and retirement plan to meet Plaintiff's objectives.

17. Burton selected the Policy, in large part, because he knew he would be paid a handsome commission for selling Plaintiff the Policy.

18. Burton was not licensed to create a retirement plan for Plaintiff and was not permitted to advise Plaintiff that the Policy was a retirement plan.

19. In order to induce Plaintiff to purchase the Policy, Burton, individually and as an agent of PIS, told Plaintiff:

>   a) the Policy would earn interest of 8% to 10% per year;
>
>   b) she could withdraw interest earned by the Policy and use it as income during her retirement, without any fees or costs assessed to her for withdrawing the funds;
>
>   c) she would not be assessed penalties for withdrawing interest earned by the Policy;
>
>   d) the Policy was suitable and appropriate for her based on her need for life insurance and retirement income; and
>
>   d) the premium for the Policy would not significantly fluctuate.

20. Burton, individually and as an agent of PIS, also failed to disclose, explain or address any maintenance fees and/or surrender fees that might apply to the Policy.

21. Plaintiff relied, in part, on the representations and omissions outlined above when she decided to purchase the Policy.

22. Had Plaintiff know the representations and omissions outlined in Paragraphs 19 and 20 of this Complaint were inaccurate, she would have never taken out the Policy.

23. During the Summer of 2014, Burton, individually and as an agent of PIS, arranged for Plaintiff to fly to his office in Tennessee where she signed the Policy application. During this meeting in Tennessee, Plaintiff completed the Policy application and tendered a check in the amount of $1,000,000 million to Burton for the Policy.

24. After some delay, Burton, individually and as an agent of PIS, sent the check and application to Allianz Life Insurance Company ("Allianz") who bound the Policy on or about December 5, 2014, and assigned the Policy – Policy Number 60075089.

25. Upon information and belief, the $1,000,000 million check for premium was received by Allianz and used to pay Plaintiff's annual premium payment during the life of the the Policy.

26. After the Policy was bound, Plaintiff traveled to South America for several months and returned to the United States, without incident.

27. In 2016, Burton, individually and as an agent of PIS, told Plaintiff she could begin withdrawing what Burton described as interest from the Policy, as part of her retirement plan.

28. In 2016, Plaintiff started to withdraw what she believed was interest earned from Policy as part of her retirement plan created by Burton.

29. Between 2016 and 2021, Plaintiff and Burton, individually and as an agent of PIS, spoke at least annually about withdraws Plaintiff was making and the "retirement plan" Burton had allegedly created for Plaintiff.

30. More specifically, Burton, individually and as an agent of PIS, made these representations to Plaintiff when they spoke on or about the following dates: January 5, 2019; April 29, 2019; October 31, 2019; February 7, 2020 and July 13, 2020.

31. During these calls, Burton, individually and as an agent of PIS, continued to represent to Plaintiff that the funds Plaintiff was withdrawing were part of her "retirement plan" and were derived from interest earned from the Policy.

32. Given the level of trust and confidence Plaintiff placed in Burton, she had no reason to question the veracity of Burton's representations to her during these interactions.

33. In or around December of 2021, Plaintiff contacted Burton because she received correspondence from Allianz which reflected the value of the Policy at $0 when Plaintiff turned age 73.

34. Plaintiff was alarmed by this correspondence and immediately contacted Burton who advised he was ill with COVID and asked her not to take any action until he recovered and was able to speak with her in more detail.

35. While Plaintiff was waiting for Burton to contact her, Plaintiff called Allianz who explained to Plaintiff, in part, how the Policy functioned.

36. During this call with Allianz, Plaintiff leaned for the first time of the misrepresentations and omissions Burton previously made to her about the Policy.

37. Shortly after her call with Allianz, Plaintiff decided to surrender the Policy and was forced to pay significant surrender fees. Had Burton been honest with Plaintiff at the outset, Plaintiff would not have taken out the Policy as it did not meet her needs or her objectives.

**CAUSES OF ACTION**

**COUNT I**
**NEGLIGENCE**
**(Burton, individually, and PIS, vicariously)**

38. Plaintiff re-alleges and reincorporates paragraphs 1 through 37, as if fully set forth herein.

39. Defendants owed a duty of care to the Plaintiff.

40. Defendants conduct fell below the applicable standard of care amounting to a breach of that duty.

41. Plaintiff suffered a loss that was proximately caused in fact by Defendants' breach of the standard of care.

42. As a direct and proximate result of Defendants' actions, Plaintiff suffered substantial injury and damage. Plaintiff is therefore entitled to (1) actual damages, (2) consequential damages, (3) costs, (4) prejudgment interest, and (5) such other relief as is just, equitable and proper.

## COUNT II
## NEGLIGENT MISREPRESENTATION
### (Burton, individually, and PIS, vicariously)

43. Plaintiff re-alleges and reincorporates paragraphs 1 through 37, as if fully set forth herein.

44. Defendants supplied information to Plaintiff about the Policy and retirement plan.

45. The information supplied by Defendants was false and the Defendants did not exercise reasonable care in obtaining or communicating the information to Plaintiff.

46. Plaintiff justifiably relied on the information communicated to her by Defendants about the Policy and retirement plan.

47. As a direct and proximate result of Defendants' actions, Plaintiff suffered substantial injury and damage. Plaintiff is therefore entitled to (1) actual damages, (2) consequential damages, (3) costs, (4) prejudgment interest, and (5) such other relief as is just, equitable and proper.

## COUNT III
## BREACH OF FIDUCIARY DUTY
### (Burton)

48. Plaintiff re-alleges and reincorporates paragraphs 1 through 37, as if fully set forth herein.

49. Burton had a fiduciary relationship with Plaintiff.

50. Plaintiff reposed confidence in Burton who exercised dominion and influence whereby Burton was to act for Plaintiff's benefit.

51. Burton breached his fiduciary relationship with Plaintiff.

52. As a result of Burton's breach of his fiduciary relationship with Plaintiff, Plaintiff had been injured.

53. As a direct and proximate result of Burton's actions, Plaintiff suffered substantial injury and damage. Plaintiff is therefore entitled to (1) actual damages, (2) consequential damages, (3) costs, (4) prejudgment interest, and (5) such other relief as is just, equitable and proper.

WHEREFORE, Plaintiff requests the following relief:

i. Find Defendants liable under Counts I, II and III;

ii. Actual damages;

iii. Consequential damages;

iv. Prejudgment interest at the highest legal rate;

v. Costs of this action; and

vi. Such other relief as is just, equitable and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

## **SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—Electronically Stored Information, paper, electronic documents, or data—pertaining to this litigation.

Dated: this 8th day of August, 2022.

                                      Respectfully submitted,

                                      /s/ John B. Veach III
                                      _____
                                      John B. Veach III, BPR #008994
                                      Veach Law PLLC
                                      20 Cedarcliff Road
                                      Asheville, NC  28803
                                      828.398-8288
                                      VeachLegal@gmail.com